# United States District Court
# Central District of California

| | |
|---|---|
| IN RE LAUREL GREENSTEIN,<br><br>　　　　　Debtor. | Lead Case No. 2:17-cv-08371-ODW<br>　Consolidated with:<br>　2:17-cv-08373-ODW<br>　2:17-cv-08899-ODW<br>　2:17-cv-08919-ODW<br>　2:17-cv-08923-ODW<br><br>Bankruptcy Case Nos.<br>1:12-bk-15099-MB<br><br>Adversary Case Nos.<br>1:15-ap-01220-MB<br><br>**MEMORANDUM OPINION** |
| AND CONSOLIDATED APPEALS | |

## I.  INTRODUCTION

Appellant Laurel Greenstein appeals from several orders issued by the bankruptcy court, relating to her Chapter 7 bankruptcy, and related adversary proceedings.  She contends that her home (the "Property") was wrongfully foreclosed

on by Wells Fargo Bank, N.A., and several corporate representatives,[1] (collectively, "Wells Fargo") in violation of the automatic stay in her case.

In a 63-page Amended Consolidated Memorandum of Decision, the bankruptcy court denied Greenstein's Motion to Set Aside Foreclosure Sale in violation of Automatic Stay ("Set Aside Motion"), and granted Motions to Dismiss Adversary Proceedings with Prejudice as to All Defendants. (Appellant's Appendix of Evidence ("AA") vol. I, 135–99, ECF No. 27.[2]) While Greenstein sets forth seven issues on appeal, the substance of her appeal focuses on the validity of an in rem order (the "In Rem Order") issued by another bankruptcy court in an action involving debtor Roger Lipkis (the "Lipkis Action"). Among other things, Greenstein claims the In Rem Order was invalid because a fraudulent deed was presented in the Lipkis Action, which purported to transfer ownership rights in the Property from Greenstein to Lipkis.

Marty A. Duran, Patricia M. Duran, and The Duran Family Trust (collectively, the "Duran Defendants") purchased the Property from Wells Fargo two years after the foreclosure sale. (Duran Defendants' Appendix of Evidence ("DER") 8, ECF No. 30-1, 30-2.) Greenstein filed adversary proceedings against the Duran Defendants as part of her Chapter 7 bankruptcy.

Greenstein's Opening Brief and excerpts of record are riddled with procedural defects. She fails to adequately cite to the record, which makes it difficult for the Court, much less her opponents, to sort through her arguments. In any event, for the reasons explained below, the Court **AFFIRMS** the bankruptcy court with respect to all of Greenstein's consolidated appeals.[3]

---

[1] The "Wells Fargo" appellees also include Dean Reeves, Robert Little, Robert Bailey, and John Stumpf. Steven Wolvek, Marisol Nagata, and Roger Lipkis are also appellees named in Greenstein's several appeals.

[2] Unless otherwise noted, all references to docket numbers are to the docket in the lead case, *In re Laurel Greenstein*, 2:17-cv-8371-ODW (C.D. Cal. Nov. 16, 2017).

[3] Greenstein requested oral argument in her Opening Brief. (ECF No. 26.) Federal Rule of Bankruptcy Procedure 8019(b) does not require a court to permit oral argument if it is unnecessary because: "(1) the appeal is frivolous; (2) the dispositive issue or issues have been authoritatively decided; or (3) the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." The Court declines to hold oral argument because the dispositive issues have been authoritatively decided. *Id.*

## II. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from several bankruptcies, adversary proceedings, and related civil actions. This convoluted procedural history arises from Wells Fargo foreclosing on Greenstein's home after she defaulted on her payments.

### A. The First Civil Action

On October 13, 2011, Greenstein filed an action in California state court, wherein she challenged, among other things, Wells Fargo's standing to foreclose on her home (the "First Civil Action"). (*See* AA vol. I, 141; Wells Fargo Appellee's Supp. Appendix ("SA") vol. III, 660–71, ECF No. 31-5, 31-6.) At a hearing on February 10, 2012, Wells Fargo's counsel informed the court and Greenstein that it obtained a grant deed, which purported to transfer title of the Property from Greenstein to Roger Lipkis (the "Lipkis Deed"). (Appellant's Opening Brief ("AOB") 16–17, ECF No. 26; SA vol. III, 678.) The Lipkis Deed, on its face, appears to have been signed by Greenstein, notarized by a notary public, and recorded with the Los Angeles County Recorder's Office on November 10, 2011. (AA vol. II, 367.) The court ultimately sustained Wells Fargo's demurrer, and dismissed the First Civil Action with prejudice. (AA vol. I, 49; SA vol. III, 674–76.[4]).

### B. The Lipkis Bankruptcy, In Rem Order, and Foreclosure

On November 18, 2011, Roger Lipkis filed a Chapter 13 bankruptcy. (DER 220). As it turns out, the reasons that he filed for bankruptcy are not germane to the Court's analysis, but the Lipkis Deed is.

The origin of the Lipkis Deed is murky. At one time, Greenstein claimed that she "strongly believe[d] [she knew] who set this fake Grant Deed up and why, but [she couldn't] prove it." (AA vol. II, 373.) Now, she simply maintains that it was a fraud.

---

[4] As noted by the Bankruptcy Court, the court did not sign the Judgment of Dismissal with Prejudice in the First Civil Action. (AA vol. I, 141 n.6.) However, as explained below, there is no evidence that Greenstein appealed the judgment from the First Civil Action, and the state court docket indicates the court dismissed the First Civil Action with prejudice on December 6, 2012. (*See id.*)

After Wells Fargo learned of the Lipkis Deed in the First Civil Action, it sought a stipulation to exclude the Property from the Lipkis bankruptcy estate. It needed to do this so that it could foreclose on the Property, which was purportedly part of the Lipkis estate by virtue of the Lipkis Deed. (AA vol. II, 412–16.) On March 19, 2012, the court accepted Wells Fargo and Lipkis's stipulation for relief from the automatic stay in the Lipkis Action, pursuant to 11 U.S.C. § 362(d)(4),[5] and entered an order reflecting the same (as defined above, the "In Rem Order"). (*Id.*; AA vol. II, 390–91.)

Mimicking verbatim Section 362(d)(4), the In Rem Order explained:

> If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) **shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing**. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

(AA vol. II, 391 (emphasis added).) The In Rem Order also found that "an interest in the Property was impermissibly transferred to [Lipkis] without the knowledge of [Lipkis]. Without [Lipkis's] consent, his Chapter 13 bankruptcy case proceeding is being used for an improper purpose as part of a scheme to delay, hinder and defraud creditors…." (AA vol. II, 392.) Greenstein did not appeal the In Rem Order.

On March 12, 2012, Wells Fargo recorded the In Rem Order at the County Recorder's Office. (AA vol. II, 388; DER 114–21.) Greenstein was not initially served with the In Rem Order, but admittedly learned of it on May 31, 2012, and

---

[5] Section 362(d)(4) provides that a bankruptcy court "shall grant relief from the stay…with respect…to real property…if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors…." The Court addresses this section in detail below.

received a copy of it on June 1, 2012.  (AA vol. I, 143 (citing Greenstein's own admissions that she received a copy of the In Rem Order), 169–70.)  Greenstein did not seek modification of the In Rem Order after receiving a copy of it.

On May 14, 2012, the trustee recorded a new Notice of Sale.  (SA vol. III, 707.)  On May 31, 2012, Greenstein filed her Chapter 7 bankruptcy.  (AA vol. I, 144; SA vol. I, 1.)  On July 11, 2012, the Property was sold by foreclosure to Wells Fargo.  (AA vol. I, 34–35.)  The Duran Defendants purchased the property a few years later.  (DER 8.)

## C.    Greenstein's Chapter 7 Bankruptcy & Related Actions

Greenstein attempted on several occasions to invalidate the In Rem Order through the filing of adversary proceedings in her Chapter 7 case, and the filing of a second state court action.  The bankruptcy court discharged Greenstein's debt on September 29, 2015.  (SA vol. I, 201.)

### 1.    Adversary Proceedings & Second State Court Action

In her first adversary case against Wells Fargo, the court granted Wells Fargo's motion to dismiss, and dismissed the adversary proceeding based on Greenstein's lack of standing.  (AA vol. I, 145–46; SA vol. II, 472.)

Greenstein filed a second adversary proceeding against Wells Fargo, but voluntarily dismissed it before the hearing.  (*See* AA vol. I, 146–47.)

On January 2, 2013, Greenstein filed another state court action against Wells Fargo, and various attorneys for Wells Fargo and Lipkis (the "Second Civil Action").  (*See* AA vol. I, 149.)  She asserted claims for intentional infliction of emotional distress, fraud, conspiracy, breach of contract, and slander of title.  (*Id.*)  She based these claims on the same challenges she asserted to the In Rem Order in her bankruptcy case, and related adversary proceedings.  (*Id.*; *see also* SA vol. III, 714–43.)  The state court ultimately sustained Wells Fargo's demurrer to Greenstein's amended complaint without leave to amend.  (SA vol. III, 748–51.)  Greenstein has not appealed, and the state court's judgement is final.  (AA vol. I, 149.)

### 2. Motion to Set Aside & Appeal

On December 27, 2013, Greenstein filed a Motion to Set Aside Sale of Property Made in Violation of Automatic Stay ("Set Aside Motion") in her main bankruptcy action, which challenged the In Rem Order on several grounds. (AA vol. I, 13.) The Bankruptcy Court denied her motion on claim preclusion principles. (*See* AA vol. I, 157.) Greenstein appealed to the Ninth Circuit Bankruptcy Appellate Panel ("BAP"), and the BAP reversed and remanded. (AA vol. I, 112, 128.) The BAP requested additional findings by the bankruptcy court explaining its application of collateral estoppel and/or res judicata. (AA vol. I, 127–32.)

On remand, the bankruptcy court declined to apply collateral estoppel or res judicata, but denied Greenstein's Set Aside Motion because: 1) the bankruptcy court in the Lipkis Action had jurisdiction to issue the In Rem Order, and Greenstein could not collaterally attack that final order through her Set Aside Motion (AA vol. I, 158–64); 2) Greenstein was afforded due process, despite not originally receiving notice of the In Rem Order, because she could have challenged it prior to the sale of the Property, but chose not to for two months; (AA vol. I, 165–71); and 3) to the extent Greenstein challenged the In Rem Order as being improperly granted, as opposed to void, she could not do so via collateral attack. (AA vol. I, 172.) Greenstein now appeals the bankruptcy court's Order on her Set Aside Motion.

### 3. Dismissal of Greenstein's Third Adversary Proceeding

On October 6, 2015, Greenstein filed her third adversary proceeding against Wells Fargo. (SA vol. II, 241.) She alleged violations of various bankruptcy rules, fraud, fraud on the court, violation of the automatic stay, perjury, and sought a declaration that the In Rem Order was void. (*See id.*) On December 15, 2015, the Bankruptcy Court granted Wells Fargo's motion to dismiss Greenstein's complaint, but granted her leave to amend. (SA vol. III, 540–47.) The bankruptcy court permitted Greenstein leave to amend over Wells Fargo's protest since Greenstein received her bankruptcy discharge in September 2015.

On February 16, 2016, Greenstein filed her First Amended Adversary Complaint ("FAAC"), which named several defendants in addition to Wells Fargo, including Roger Lipkis, Steven Wolvek, Dean Reeves, Marisol Nagata, Robert Little, Robert Bailey, John Stumpf, Robert Lindaman, and the Duran Defendants. (AA vol. II, 285.[6])

On March 21, 2016, Wells Fargo (along with the associated corporate defendants) moved to dismiss the FAAC. (SA vol. III, 569.) The Duran Defendants, Steven Wolvek (Lipkis's attorney), and Marisol Nagata (Wells Fargo's attorney that appeared in the Lipkis Action) also moved to dismiss. (*See* AA vol. I, 191–93.) On October 31, 2017, after several hearings and continuances, the bankruptcy court granted all defendants' motions to dismiss, without leave to amend, as detailed in its 63-page Amended Consolidated Memorandum of Decision. (AA vol. I, 174–93.) The bankruptcy court then issued separate orders of dismissal for each of the defendants, which led to Greenstein's multiple appeals. (*See* AA vol. I, 201–11.)

**D.  Greenstein's Appeal**

On November 6, 2017, Greenstein appealed from the bankruptcy court's Order dismissing the FAAC against Wells Fargo in the third adversary proceeding. (AA vol. I, 1.) She subsequently filed individual appeals relating to the bankruptcy court's dismissal of Nagata, and the Duran Defendants, as well as its denial of her Set Aside Motion. On January 29, 2018, the Court consolidated all of these appeals because they relate to the same nucleus of fact. (*See* ECF No. 11.) The consolidated appeals are now before the Court for decision, and have been briefed by the parties.

---

[6] As with much of the record submitted by Greenstein, there are several pages of this appendix of evidence that are not numbered, or otherwise marked. For this citation the Court refers to a handwritten "285" on the bottom right-hand corner of the page. The page is also identified as Page 112 of 216, at ECF No. 28.

## III. ISSUES ON APPEAL

Greenstein articulates several issues on appeal. (AOB 11; *see also* Wells Fargo's Reply Brief ("WFR") 3–4, ECF No. 31.) Distilled below in the most basic terms are the issues:

1. Whether Greenstein can prevail on appeal without providing a record or opening brief that complies with the Federal Rules of Bankruptcy Procedure ("FRBP");

2. Whether the bankruptcy court erred in denying Greenstein's Set Aside Motion; and

3. Whether the bankruptcy court erred in granting Wells Fargo, the Duran Defendants, Wolvek, and Nagata's Motion to Dismiss Greenstein's FAAC in her third adversary proceeding.

## IV. STANDARDS OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1).

Greenstein fails to provide the standard of review in violation of FRBP 8014(a)(5). The Court reviews the bankruptcy court's order granting Defendants' motions to dismiss with prejudice de novo. *I.R.S. v.* Snyder, 343 F.3d 1171, 1174 (9th Cir. 2003); *see also In re EPD Inv. Co., LLC*, 523 B.R. 680, 684 (B.A.P. 9th Cir. 2015) ("The bankruptcy court's dismissal of an adversary complaint for failure to state a claim under Civil Rule 12(b)(6) is reviewed de novo."). The Court also "review[s] de novo whether the automatic stay provision of § 362(a) has been violated." *In re Del Mission Ltd.*, 98 F.3d 1147, 1150 (9th Cir. 1996).

## V. DISCUSSION

### A. Procedural Defects

Pro se litigants must comply with basic procedural requirements, despite not being represented by an attorney. *See Greco v. Stubenberg*, 859 F.2d 1401, 1404 (9th Cir. 1985) (affirming dismissal of bankruptcy appeal where appellant failed to timely make written request for transcript, and where the court permitted appellant

opportunity to cure non-jurisdictional defects); *c.f. United States v. Flewitt*, 874 F.2d 669, 675 (9th Cir. 1989) (noting in criminal context that "Pro se status does not excuse a criminal defendant from complying with the procedural or substantive rules of the court"). Indeed, appellate courts routinely dismiss, or summarily affirm, appeals where the appellant fails to comply with procedural requirements. *Han v. Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007) (dismissing appeal where appellant failed to accurately cite to the record, or provide the appropriate standard of review); *Mitchel v. Gen. Elec. Co.*, 689 F.2d 877, 879 (9th Cir. 1982) ("[Appellant's] failure to refer to the record works a hardship not only on this court, but also on the opposing litigants.").

Here, the Court explained to Greenstein on several occasions that she must comply with the procedural requirements set forth in the FRBP and the local rules. (*See* ECF Nos. 7, 9, 19 ("Greenstein must comply with the proper procedures, and cannot continue to disregard the Local Rules."); 23.) The Court encouraged her to retain counsel, and directly cited to, and quoted from, the rules governing the requirements for, and formatting of, Greenstein's Opening Brief. (ECF No. 23.) Despite this, she failed to serve an appendix of evidence with her Opening Brief. (*See id.*) The Court provided her additional time to do so. (*Id.*) Even then, she 1) did not include the dockets from her bankruptcy or the adversary proceeding; 2) did not include all of the documents identified by appellees; and 3) omits several documents she purports to rely on in her Opening Brief.

Greenstein's Opening Brief itself is equally deficient. As noted above, she did not provide a standard of review. (AOB 22.) She also regularly makes factual assertions that are not supported by citations to the record. (*See, e.g.*, AOB 16 (discussing allegations regarding foreclosure forbearance plan, and payments thereunder); 15 (discussing her alleged unlawful detainer action); 18 (discussing her assertion that Lipkis did not list the Property in his bankruptcy schedules); 32 (arguing that Lipkis's attorney "admitted he signed the stipulation as a favor to a colleague, and

apparently without his clients' knowledge…").  Her legal citations often include nothing more than a case name, and sometimes a date.  (*See, e.g.*, AOB 32.)  Ultimately, the Court acknowledges the harshness of declining to address the merits of an appellant's brief because of procedural deficiencies, and thus turns to the merits of Greenstein's appeal.  *See Sekiya*, 508 F.3d at 1200.  However, Greenstein "is not 'entitled to have [the Court] expatiate on [its] reasons for finding [her] case unmeritorious.'"  *Id.* (quoting *N/S Corp. v. Liberty Mut. Ins. Co.*, 127 F.3d 1145, 1147 (9th Cir. 1997)).

**B.  Greenstein's Set Aside Motion**

Greenstein's Set Aside Motion argued that the In Rem Order was invalid at the time the bankruptcy court issued it in the Lipkis Action, and therefore the automatic stay in her Chapter 7 case precluded sale of the Property.  (AOB 24.)  If, on the other hand, the In Rem Order was valid, then it is clear that it applied to the Property, despite it potentially being part of Greenstein's estate.

Greenstein's position below can be distilled to three points: 1) the bankruptcy court in the Lipkis Action did not have jurisdiction to issue the In Rem Order; 2) Greenstein was not afforded due process because she did not initially receive notice of the In Rem Order, despite disputing the validity of the Lipkis Deed; and 3) the bankruptcy court violated the stay order in her Chapter 7 case.  The bankruptcy court addressed these arguments, explained its reasoning, and the Court agrees and **AFFIRMS**.

### 1.    *Jurisdiction & Application of Section 362(d)(4)*

28 U.S.C. § 1334 grants a bankruptcy court "exclusive jurisdiction – (1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate…."  "Federal courts considering [whether] a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an 'arguable

basis' for jurisdiction." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986)).

Here, the bankruptcy court in the Lipkis Action entered its order excusing the Property from the automatic stay pursuant to 11 U.S.C. § 362(d)(4). (AA vol. II, 388–92.)  Section 362(d)(4) allows the court to exempt certain property from the automatic stay *in all bankruptcy cases* for a period of two years where it finds that the property has become part of a scheme to delay, hinder, or defraud creditors.  *See* 11 U.S.C. § 362(d)(4); *see also In re First Yorkshire Holdings, Inc.*, 470 B.R. 864, 870 (B.A.P. 9th Cir. 2012) (discussing application of section 362(d)(4)).  A debtor does not have to be part of the scheme to hinder, delay, or defraud creditors for section 362(d)(4) to apply to the debtor's bankruptcy.  *See In re Dorsey*, 476 B.R. 261, 267–68 (Bankr. C.D. Cal. 2012) (citing *In re Duncan & Forbes Dev., Inc.*, 368 B.R. 27, 32 (Bankr. C.D. Cal. 2006)).  This does not leave the uninvolved debtor without recourse, however.

Pursuant to section 362(d)(4), a debtor, like Greenstein, in a subsequent bankruptcy action "may move for relief from [an in rem order] based upon changed circumstances or for good cause shown, after notice and a hearing."  11 U.S.C. § 362(d)(4).  Unless a debtor seeks such relief, the entry of an in rem order under Section 362(d)(4) provides expansive protection for creditors:

> By seeking relief under § 362(d)(4), the creditor requests specific prospective protection against not only the debtor, but also every non-debtor, co-owner, and subsequent owner of the property.  [citation]  If granted, such relief nullifies the ability of the debtor and any other third party with an interest in the property to obtain the benefits of the automatic stay in future bankruptcy cases for a period of two years.

*In re First Yorkshire Holdings, Inc.*, 470 B.R. at 871 (citing *In re Abdul Muhaimin*, 343 B.R. 159, 166–70 (Bankr. Md. 2006)).

The court in the Lipkis Action had jurisdiction to act because it issued its order pursuant to Title 11 of the United States Code. *See* 28 U.S.C. § 1334(b) (granting broad authority to act under Title 11). Greenstein's argument that the Lipkis Deed was fraudulent did not affect the court's jurisdiction because, as explained above, Title 11, section 362(d)(4) by its very terms applies to fraudulent transfers of real property. *See In re Duncan & Forbes Dev., Inc.*, 368 B.R. at 34 (quoting *In re Braus*, 248 F. 55, 64 (2d Cir. 1917)) ("A transfer with unlawful intent to hinder or to delay 'must be devised and contrived of malice, fraud, covin, collusion, or guile.'").

Finally, Greenstein contends that *In re Johnson*, 346 B.R. 190 (B.A.P. 9th Cir. 2006) supports her position. (*See, e.g.*, AOB 40.) However, in *Johnson*, the BAP analyzed the propriety of an in rem order that was issued prior to the 2005 adoption of section 362(d)(4), in its current form. *See In re Johnson*, 346 B.R. at 195 ("The foundational proposition is that nothing in § 362, as it existed before October 17, 2005, expressly authorized an 'in rem' stay relief order."). Accordingly, *Johnson* is not applicable here because the court in the Lipkis Action issued the In Rem Order after the enactment of section 362(d)(4), which specifically provides for the relief in the In Rem Order. 11 U.S.C. § 362(d)(4).

### 2. Due Process

Greenstein next argues that she was denied procedural due process because she was not provided notice of the In Rem Order, when the court issued it in the Lipkis Action. (AOB 25.) The bankruptcy court concluded that Greenstein was likely entitled to notice of the In Rem Order in the Lipkis Action, but that she was provided procedural due process because she knew of the In Rem Order prior to the sale of the Property, but did nothing. (*See* AA vol. I, 165–71.)

Nothing in section 362(d)(4) requires notice to non-debtors like Greenstein. Instead, the bankruptcy court below held that traditional notions of due process required notice to Greenstein. (*See id.*) On appeal, Wells Fargo argues that Greenstein had no vested property interest in the stay in the Lipkis Action because the

In Rem Order had no effect on the Property until she filed her own bankruptcy seeking protection in the form of a stay. (WFB 37–42.) In other words, a prospective stay in her *own* bankruptcy proceeding, which she admittedly did not start until *after* the issuance of the In Rem Order, did not entitle her to procedural protections in the Lipkis Action. Courts have come out on both sides of this coin. *Compare In re Black*, 514 B.R. 605 (Bankr. E.D. Cal. 2014) (holding no notice required because the debtor may request relief from the in rem order in his or her own bankruptcy case); *In re Hatton*, 2017 WL 4155326, at *3–*4 (Bankr. E.D. Cal. 2017) (holding that non-debtor not entitled to notice of in rem order) *with In re Dorsey*, 476 B.R. at 270 (emphasis added) (noting that there "*could be* due process concerns as to the original borrower," but concluding that borrower was afforded due process). The Court declines to affirmatively address whether due process mandates that a non-debtor is provided notice of an order under section 362(d)(4) because it finds that Greenstein was ultimately afforded due process here, despite the initial lack of notice.

"[P]rocedural due process claims are resolved by balancing tests, where differing interests can give rise to many differing procedural requirements." *Brittain v. Hansen*, 451 F.3d 982, 1000 (9th Cir. 2006) (citing *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005)). "[T]he requirements of due process are flexible and call for such procedural protections as the particular situation demands." *Wilkinson*, 545 U.S. at 224. Here, Wells Fargo recorded the In Rem Order, in accordance with state law, on March 28, 2012. (AA vol. I, 388.) The foreclosure trustee then issued a new notice of sale on May 14, 2012, with a sale date scheduled for June 4, 2012. (AA vol. I, 115.) Greenstein filed for bankruptcy on May 31, 2012, and on the same day the foreclosure trustee advised her of the In Rem Order, and explained that the automatic stay did not protect the Property as a result. (AA vol. I, 169–70; SA vol. IV, 850–51.)

The next day, Wells Fargo's counsel provided Greenstein with a copy of the In Rem Order, and continued the foreclosure sale for almost six weeks to provide her an opportunity to act accordingly. (*See id.*) The In Rem Order specifically explained

that the Property would be exempt from her bankruptcy proceeding, and that she could challenge it "based upon changed circumstances or for good cause shown…." (AA vol. II, 388–94). Despite these very clear warnings, Greenstein did not seek relief until after the foreclosure sale, when she filed a motion in the Lipkis Action on August 7, 2012 (more than three weeks after the sale). (*See* AA vol. I, 144–47.) The judge in the Lipkis Action denied Greenstein's request, in addition to two subsequent motions filed by Greenstein. (*Id.*)

Moreover, Greenstein knew of the Lipkis Deed since at least February 2012, which put her on notice of the allegedly fraudulent transfer. (AA vol. II, 371; SA vol. III, 678.) At that point, she was also represented by counsel. (AA vol. II, 371.) Ultimately, the Court finds that Greenstein was provided sufficient due process because she had six weeks to challenge the In Rem Order before the foreclosure sale, but she failed to exercise her right to do so. *C.f. Hudson v. Palmer*, 468 U.S. 517, 533–35 (1984) (discussing procedural due process requirements where plaintiff is afforded post-deprivation remedy); *Sorrels v. McKee*, 290 F.3d 965, 972 (9th Cir. 2002) (holding, in prisoner case, that "[i]f meaningful post-deprivation remedy exists for an alleged deprivation of property, then that post-deprivation remedy is sufficient to satisfy the requirements of due process"). Procedural due process only affords the opportunity to challenge an action; a litigant's failure to timely take advantage of that opportunity is not sufficient to invalidate a prior final order.

### 3. The Bankruptcy Court Did Not Violate the Stay

Greenstein also argued that the court violated the stay in her case by allowing the sale of the Property. (AA vol. I, 18.) However, as reasoned by the court below and explained in detail above, the In Rem Order was a valid, final order of the court in the Lipkis Action. It allowed Wells Fargo to recover the Property, and excluded it from any subsequent bankruptcy stays pursuant to section 362(d)(4). Moreover, to the extent that Greenstein challenged the specific findings made in the Lipkis Action, as opposed to arguing it was void, she may not collaterally attack that order in a

subsequent proceeding. *See In re Alakozai*, 499 F.R. 698, 704 (B.A.P. 9th Cir. 2013) (holding that the grant of a motion for relief from the automatic stay is a final order that may not be collaterally attacked).

In conclusion, the Court **AFFIRMS** the decision below denying Greenstein's Set Aside Motion.

## C. Defendants' Motions to Dismiss

The Bankruptcy Court dismissed Greenstein's FAAC because it failed to state a claim upon which relief could be granted. On a motion to dismiss, bankruptcy courts apply the well-known standard of Federal Rule of Civil Procedure 12(b)(6), made applicable to bankruptcy proceedings through FRBP 7012. A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The bankruptcy court separately addressed Wells Fargo's, Wolvek and Nagata's, and the Duran Defendants' Motions to Dismiss, and so will this Court.

### 1. *Wells Fargo*

With the exception of Greenstein's claim that Wells Fargo violated the stay, the bankruptcy court dismissed all of Greenstein's claims in the FAAC without leave to amend because they were barred by res judicata.[7] (AA vol., I 174–75.) Res judicata applies if a second suit involves (1) the same cause(s) of action (2) between the same parties, or those in privity, (3) after a final judgment on the merits in the first suit.

---

[7] Wells Fargo notes, and the Court acknowledges, that the Bankruptcy Court declined to apply res judicata principles in the portion of its order denying Greenstein's Set Aside Motion, but then later applied it to dismiss Greenstein's FAAC. (WFB 33.) This inconsistency is troubling, but the Court may affirm on any basis supported by the record. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 949 (9th Cir. 2005). And, the Court chooses to apply res judicata here. As explained above, Greenstein's Set Aside Motion was properly denied for a variety of reasons, despite the Bankruptcy Court's failure to apply res judicata.

*Citizens for Open Gov't v. City of Lodi*, 205 Cal. App. 4th 296, 324 (2012). "Res judicata bars the litigation not only of issues that were actually litigated but also issues that could have been litigated." *Id.* (citing *Busick v. Workmen's Comp. Appeals Bd.*, 7 Cal. 3d 967, 975 (1972)).

Here, Greenstein's Second Civil Action asserted claims for intentional infliction of emotional distress, fraud/deceit, breach of contract, conspiracy, and slander of title. (SA vol. III, 714–44.) It named Wells Fargo, Marisol Nagata, and Steven Wolvek as defendants, among others. (*Id.*) In any event, the allegations in the Second Civil Action complaint surround the same nucleus of facts that form the basis of her FAAC: 1) she claimed she suffered harm because Wells Fargo improperly foreclosed on her home; 2) she claimed the Lipkis Deed was a forgery that the defendants fraudulently used to assist in foreclosing on her home; and 3) she requested damages and equitable relief resulting from application of the In Rem Order and sale of her home. (*Compare id. with* AA vol. II, 285, et seq.) Despite the addition of a few new defendants in her FAAC, including attorneys and other agents of Wells Fargo, the allegations remain the same—that her rights were violated by way of application of the In Rem Order, and subsequent foreclosure of her home. To the extent that these claims were not brought in the Second Civil Action, they certainly could have been, as they were based on the same facts. *Citizens for Open Gov't*, 205 Cal. App. 4th at 324.

Next, the parties in both actions were the same or in privity with each other. (SA vol. III, 714–44; AA vol. II, 285, et seq.) Thus, the second element is met.

Finally, the court in the Second Civil Action sustained Wells Fargo's demurrer without leave to amend. (SA vol. III 746–49.) This acted as a final decision on the merits, which Greenstein never appealed. *See Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 793 (2010); *Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 364 (9th Cir. 1993) ("In California, a judgment entered after the sustaining of a general demurrer is a judgment on the merits, and, to the extent that it adjudicates that the facts alleged do not establish a cause of action, it will bar a second

action on the same facts."). Accordingly, with the exception of the claim that Wells Fargo violated the stay, Greenstein's claims against Wells Fargo and its attorneys and employees were barred by the judgment in the Second Civil Action. The bankruptcy court below went on to address her claims individually, but the Court declines to do so because it may affirm on any basis supported by the record. *Livid Holdings Ltd.*, 416 F.3d at 949.

Greenstein's claim that Wells Fargo and its agents violated the stay in her Chapter 7 bankruptcy case is also unavailing. The Court explained in detail above how and why the In Rem Order exempted the Property from the stay in her bankruptcy case, and incorporates that reasoning here by reference. (*See supra* Part V.B.3.)

Greenstein did not challenge the denial of leave to amend in her appeal, therefore has waived that argument. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) (citing *Brookfield Commc'n, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 n.7 (9th Cir. 1999)) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived."). In any event, leave would have been futile given the facts of this case. Accordingly, the Court **AFFIRMS** the dismissal of Greenstein's claims against Wells Fargo, Dean Reeves, Robert Little, Robert Baily, and John Stumpf.

### 2.  *Wolvek & Nagata*

The Bankruptcy Court dismissed Greenstein's claims against these defendants because they were barred by the final judgments in the Second Civil Action, and the second adversary proceeding. (AA vol. I, 191–92.) On appeal, Nagata joins in Wells Fargo's reply brief (ECF No. 33), and Wolvek failed to respond. In any event, the Court **AFFIRMS**, for the reasons below.

Greenstein's Second Civil Action complaint asserted claims against Wolvek and Nagata, which centered on the Lipkis Action, Lipkis Deed, In Rem Order, and subsequent foreclosure. (SA vol. III, 714–49.) The court dismissed these claims without leave to amend. (*Id.*) For the same reasons discussed above, this foreclosed

Greenstein's claims against the same defendants surrounding the same conduct, in a successive suit. *Citizens for Open Gov't*, 205 Cal. App. 4th at 324.

### 3.    The Duran Defendants

The Bankruptcy Court dismissed the Duran Defendants because Greenstein did not allege a plausible claim against them.   (AA vol. I, 193.)   Greenstein only mentioned the Duran Defendants twice in the FAAC, and only in reference to them purchasing the property from Wells Fargo years after the Property was sold at foreclosure.   (AA vol. II, 288, 338.)   This was not enough to sustain a claim against them.   The Bankruptcy Court liberally construed these allegations as supporting Greenstein's claim for quiet title.   However, as discussed above, Greenstein's attempts to invalidate the sale of the Property are not legally sound, and therefore she could not maintain such an action against the Duran Defendants for quiet title because she did not have a valid claim of title. *See* Cal. Civ. Proc. Code § 761.020 (listing elements for cause of action in quiet title); *see also Humphreys v. Ocwen Loan Servicing, LLC*, No. CV0808154MMMRCX, 2009 WL 10672594, at *6 (C.D. Cal. Feb. 23, 2009) (holding plaintiff must allege title to property).   Moreover, there were no allegations that the Duran Defendants were not bona fide purchasers.   Accordingly, the Court **AFFIRMS**.

///
///
///
///
///
///
///
///
///
///

# VI.   CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the bankruptcy court's judgments, as appealed from in the following consolidated case numbers:

- 2:17-cv-8371-ODW (Lead Case)
- 2:17-cv-8919-ODW
- 2:17-cv-8899-ODW
- 2:17-cv-8923-ODW
- 2:17-cv-8373-ODW

**IT IS SO ORDERED.**

August 14, 2018

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**